People v. Michael Meeks, Mr. Evers, and I'm trying to save here. Miss... I can't read your writing here. Good morning, your honors. This is People Kate, People v. Michael Meeks. He was convicted and sentenced on two counts of burglary. In our original brief, we raised an issue that he was improperly sentenced as a Class X offender. And we provided a record which pretty much demonstrated that one Class X or Class II offense was not a Class II offense. And then the state on its reply said, well, there was these other Class II offenses on the record that were not put in the BSI. And therefore, you should affirm. I would suggest that your honors could just shrug your shoulders and say, let's send it back to the circuit court to sort this out, but that's a matter for your honors to decide between what the competing records show. Do you feel we have an option to send it back to the trial court for a new sentencing hearing? I would say that if you want to say, let's send it back to really make sure about what's going on, that certainly is an option that you have. Don't we have another option, 366? You could simply affirm saying that the record is sufficient, but we've been fooling around with the record and what the class of the offenses is, and maybe that would be up to you. Otherwise, we have raised two issues, one in the original brief and one in the supplemental brief. After all this occurred, I thought maybe I should raise an issue about what the MSR term is in the supplemental brief. And we argue that the mandatory supervisory lease term for this offense, if it's going to be sentenced as a class X offense, still under Section 5-5-3, subsection C, subsection 8 of the Unified Code of Corrections, it still requires a mandatory supervisory lease term of two years imprisonment and not three years imprisonment. And this comes with the intersection of these various statutes and the Illinois Supreme Court decision in Pullen. Now, Pullen was decided and said that just because he's to be sentenced as a class X offender still makes the class of the offense the same class. So he's convicted of burglary. It's a class 2 offense. He's to be sentenced as a class X offender, but he still has to fall within the mandates of the mandatory supervisory lease term, which says that for a class 2 offense, you get a two-year mandatory supervisory lease term. What isn't that part of the sentence, though? That is what the argument that the state makes. And then that gets into how the various intersections and how you have to interpret statutes. Now, I freely admit that I have got an uphill struggle here because there were several cases, Anderson and Smart, which said the mandatory supervisory lease term was three years. Those two cases were decided before Pullen. Then after Pullen, then there were some arguments made. This argument has been specifically rejected by the third district, or it might be the second district, cited in the brief, McKinney. And so, indeed, there is appellate court case law that has rejected this argument. This court has never directly addressed it. The problem in the intersection between these two statutes is that it's just simply ambiguous about what you're supposed to be doing. You have this thing that you're supposed to be sentenced as a class X offender, and then the absolute mandate of the MSR statute saying that for a class 2 felony, you get a two-year mandatory supervisory lease, and Pullen saying that the class of the offense does not change, then these statutes are just not being – they are just ambiguous. And in terms of ambiguity, you have to say it goes to defendant, the rule of leniency, and that if the legislators want to fix this, they have a very simple procedure by which they could do it. They could add into the statute and say, and he gets this MSR period for this mandatory – or it's the section of the statute that provides for mandatory sentencing for class X – as a class X offender, if you have three or two prior class 2 felonies or two prior class 1 felonies, you can always amend that. And so it gets back to, with the rule of leniency, the legislators can always fix this problem, and that it is not a matter for this court to try to define what the legislators really meant when it's so ambiguous. We also raised in our original brief that there's a one-act-one-crime problem here. He was convicted of two counts of burglary, sentenced on two counts of burglary, and most people, if you ask them on the street, would just say that, no, there was one burglar here. And we cite to a third district case a people named Duncan for this proposition. In Duncan, there were two counts of burglary, one count based upon entry with the intent to commit theft, one count based upon an entry with intent to commit arson. They poured some gasoline and some whiskey and other liquor on the floor and tried to start a fire. That didn't work. And then they went outside of the building and then eventually threw some matches in to start this fire at the building. And the court said that this was all one continuation of a plan to commit burglary and commit arson. Was this the case, I mean, your case here, where they had a shopping cart full of food or some items? Yes. And there was just one cart, and it went out to the store just at one time? Yes. But he came in twice? Yes. Okay. And there's a video in the record in which some female person that he was with, you would say that she was the accomplice. Was she culpable? I believe she was. I did not follow what actually occurred with her. But in this case, he has shown going in, shown putting stuff in the shopping cart, shown parking it in front of this front door, the entrance door, and then going out the exit door. And the testimony showed that the Aldees had kept that door so that people could not go out. And so he went out, looked through the window. Were the charges virtually the same other than maybe a time difference? It's a very short time difference, yes. But, I mean, the actual wording of the charges were the same? They try and make the charging to reflect the two different entrances, yes. And the state wants to make this that. To commit a theft? Yes, to commit a theft. Okay. And so when he goes out and comes back in, the state wants to say that if he had not come back in, he could still be convicted of that first entry. And that's theoretically possible, I suppose. That's a matter of proof. But it would surely be very difficult to prove that you had an intent to steal, just because you put stuff in the shopping cart and then left it, and then put it back and left. So they really were looking at showing that the intent of the theft was by coming back a second time. We would urge your honors to vacate 126. Thank you. Thank you, counsel. Good morning, and may it please the court, counsel. I'll start off where the defendant did with the mandatory supervised release. As you pointed out, the Supreme Court has not come down on this issue. However, every district, other than our own, has come down, and it's always come down with the holding that a Class Act sentence carries within a three-year term of mandatory supervised release. Now, the defendant was insinuating that there was a case that came down with the opposite holding, and I believe he's referring to People v. Hoekstra, which he did say in his brief, and that was a 2nd District case. However, subsequent to Hoekstra, the 2nd District came down with McKinney, where they unequivocally said that the pull-in case does not affect the fact that a Class Act sentence carries a three-year term of mandatory supervised release. There is just no case law that finds contrary to that. So I think our body of law is fairly dispositive on that case. The statute itself, which provides for Class Act sentencing, does not mention mandatory supervised release. The statute the defendant relies on is the statute that simply talks about mandatory supervised release for Class I and Class II felonies. There's nothing in there about Class Act sentences. Moving on to the King issue, there were two separate overt acts, and that's really all that's needed to sustain the two separate burglaries. The first time that the defendant entered, and as mentioned already, the information, which you'll find on the Common Law, page 42, shows from the get-go the defendant was charged with two counts of burglary.  Throughout the trial, the state distinguished between these two counts, pointing out to the jury the distinctions between the two counts and why there were two bad acts. Thus, People v. Crespo is satisfied as far as King goes. The fact that in the first, the defendant spoke about being able to have proof of the first burglary. Well, there was surveillance cameras that showed that the defendant acted suspicious. He made a couple of circles around the store. He had purchased plants. He went to the freezer and just, you know, without having any discretion, just started tossing things from the freezer into his cart. That's not normal behavior. That's fairly suspicious of burglary. Then he just left the cart and walked out where his accomplice took over the cart, added some more things, and he opened the door, entered the second time in order to let her exit because she couldn't exit herself without her. If he hadn't tried to get out the back door and it was locked and he came back in and went out the front door, would that be two burglaries? If he had tried to go out the back door, I'm sorry. If he came in the first time and tried to get out the back door and he couldn't, so he left. He came back in and took the cart out the front door. Those are two different burglaries. Absolutely, absolutely. Those are two different burglaries. With two entrances and each time there was an intent to commit a theft, absolutely. I would agree that sometimes there can be an issue of can you prove the first burglary. But then again, the statute does not require that items actually have to be stolen. It just requires the intent. And yes, when items aren't stolen, it does make proof more difficult. But in this case, both counts were presented before a jury, and the jury found beyond a reasonable doubt there was proof of that first burglary. He could have been found only guilty of the burglary, which the information charged occurred at 205. So that really becomes an issue of fact. If the door is locked and he leaves the cart and he comes back in, can you prove the two counts? That's an issue of fact that goes to the jury. And in this case, the jury found that the surveillance cameras… Was this the only way that he could… Obviously, he didn't get by with it, but this was what he thought was the only way that he could get by with this theft, was to do it the way that he did it, by coming in twice. Without trying to speculate what was in his mind, I assume he knew that if he had tried to take the cart out through the exit door, he would have been caught. He was caught. The way he thought he could get away with it, he ended up being caught anyway. So his plan to steal, to burglarize or steal, had to involve two different entries into the building. Right. His plan had to involve… Well, first it involved the help of his accomplice. I mean, his original intent was he had to go in twice, right? Right, right. In order to steal what he shoplifted. Right. This was a preconceived plan where they figured out from the beginning that this was the way he was going to do it. However, if he had… And as I explained in the brief, if he hadn't been present for the first portion, so if the plan had just been for the accomplice to enter by herself, fill up the grocery cart with the groceries and then wait for him to come in just once to let her leave… Come in and unlock a door and then go out and come back in again and go out that unlocked door. Right, that would have been one… That's twice, right? That's twice. Now, if he had just had her go in by herself, fill up that cart of groceries and wait for him to come in so she could leave, that's just one count of burglary. He hasn't come in twice. It's the fact that there were two entries and the fact that there was intent to commit theft with each entry. The fact that there was nothing that was carried out of the store the first time is irrelevant. The Duncan case that the defendant relies on, well, there he was convicted of one count of arson, two counts of burglary, and one of those counts of burglary was with intent to commit arson and one with intent to commit theft. And there the court found that when he had thrown the firework, he had broken a window in his initial entry, when he threw a firework through the hole, that was not a separate entry for the purpose of committing a theft. That was just his initial attempt at arson didn't work and so he was just trying to make that work. That did not count as a separate entry. Here we have two separate physical entries which makes this case distinguishable from Duncan and makes it more analogous to the cases such as People v. Myers where a defendant stabs a victim in the same spot very quickly in rapid succession. That's two separate entries so they're two separate and distinguishable counts. As far as the issue of the ninth of cases, the record that was a little bit agreed, it was a little muddled throughout this appeal, if Your Honor were to send this case back for resentencing, really we would end up with the same results. The defendant had the record on the day of sentencing to qualify him as a Class X offender. That's a question. The fact that the trial court based his status on the wrong convictions really makes no difference as far as what the outcome was. In the interest of time and judicial economy, it really would make sense simply to affirm the defendant's sentence provided that he had more than enough convictions to qualify him as a Class X or qualify him for Class X sentencing. The supplement to the record, and Your Honors did take judicial notice of that on November 22nd, 2010. The ex-judicials get three counts of burglary from a 2000 case. So we could send it back for resentencing, but it is the state's belief that this would just delay a process and we'd end up exactly where the defendant is right now. If Your Honors don't have any other questions, that's all I have on this issue. Thank you, Counsel. Thank you. Can you rebuttal, Counsel? Yes, Your Honor. Counsel said something very interesting at the time, that if his accomplice went in and then he just later went in and let her out, and that just happened to be one burglary in her mind. When you start breaking all that down, the accomplice's injury is one injury. For the logistical idea of committing one theft, and then he could be charged for accountability based upon that one injury. I mean, if he stays out of the car and is the driver to get her away, he's guilty of burglary by her injury. His coming in then, under the state's theory, would make him guilty of another burglary, because he's doing some separate act, and that's just in terms of what people think of what's going on. That's not what's going on. They're doing one burglary of this, all these, this retail store. In terms of the logistical plan, if you look at how burglaries of residents go, a van backs up to a back door. They go in. They get stuff. They take it out to the van. They go back inside. They take stuff out, put it in the van, and it would then become the idea of how many times do they go back in? Is that each a separate residential burglary for which they can be sentenced? And most people would say they're just one burglary going on because they have this plan to go in and steal stuff from this house, and that there is no real separate injury, no real added danger to society by going in and out and going in and out by taking the stuff out of the house. Consequently, we would argue that one conviction for the burglary has to be vacated because it violates the one act, one crime decision of the Supreme Court in King. If the court has no other questions, I would simply ask you to vacate that conviction. Thank you, counsel, for your brief and argument today. I take the matter in violence to be recessed until 10 o'clock.